2006 ND 219

In the Matter of the GUARDIANSHIP AND CONSERVATORSHIP OF Lucille L. THOMAS, an Incapacitated Person.

**Harold Kolrud, Petitioner and Appellant,**

v.

**David Thomas, Respondent and Appellee.**

No. 20050370.

Supreme Court of North Dakota.

Oct. 20, 2006.

Michael Geiermann, Schulz Geiermann & Bergeson Law Offices, P.C., Bismarck, N.D., for petitioner and appellant.

Robert G. Manly (argued), Vogel Law Firm, Moorhead, MN, and Daniel D. Narum (on brief), Kessel, Splitt and Narum, LaMoure, N.D., for respondent and appellee.

MARING, Justice.

[¶1] Harold Kolrud appealed from a district court order appointing David Thomas guardian and conservator for Lucille L. Thomas and from an order denying Kolrud's claim for wages and expenses incurred in assisting her. We conclude the district court did not abuse its discretion in appointing David Thomas guardian and conservator or in denying Kolrud's claim for wages and expenses. We affirm.

I

[¶2] Lucille Thomas was born in 1915 and lived in the LaMoure area until her husband died in 1987. She eventually moved to Jamestown. In 1992, Kolrud was introduced to Lucille Thomas by a friend who told him Lucille Thomas was

concerned about her financial affairs and taxes. Lucille Thomas's husband had handled the couple's finances and Kolrud was licensed to sell insurance, annuities, and other financial products. Kolrud and Lucille Thomas developed a close friendship and Kolrud began handling her investments. Those assets have increased significantly since then.

[¶ 3] In 1997, Lucille Thomas executed a will leaving her estate to her son and only child, and naming Kolrud as an alternate beneficiary. She also executed a durable power of attorney appointing Kolrud to serve as her attorney in fact and nominating him to serve as guardian and conservator if she became incapacitated. After her son died in 1998, Lucille Thomas executed a codicil to the will naming Kolrud as a beneficiary. Between 1997 and 2000, Kolrud sold Lucille Thomas seven annuities for which he received commissions, and he also named himself the beneficiary on the annuities. According to Kolrud, he and Lucille Thomas agreed that he would care for her in return for receiving the balance of her estate when she died, and Kolrud cared for and assisted her throughout the years. In January 2003, Lucille Thomas began paying Kolrud $1,400 per month to care for her at her Jamestown apartment, and Kolrud quit his employment from which he had been earning $20 per hour. In October 2003, Lucille Thomas fell in her apartment and fractured her hip, necessitating her placement in a Jamestown nursing home. Kolrud and his family and friends cleaned out her apartment, stored and sold some of her belongings, and continued to take care of her needs.

[¶ 4] David Thomas is Lucille Thomas's nephew who resides in Owatonna, Minnesota, about 400 miles from Jamestown. He is retired, but continues to work, owns several businesses, and is financially secure. He visited Lucille Thomas about once each year, but became concerned about her situation after she entered the nursing home. David Thomas contacted Kolrud and asked about the contents of Lucille Thomas's will and power of attorney. Lucille Thomas granted her attorney authority to speak with David Thomas about her financial situation. In January 2004, Lucille Thomas met with her attorney and David Thomas at the nursing home. A new will was drafted removing Kolrud as a beneficiary, and a new power of attorney was drafted replacing Kolrud with David Thomas.

[¶ 5] After Kolrud learned of the changes to the will and power of attorney, he petitioned for appointment as Lucille Thomas's guardian and conservator. The district court appointed Kolrud emergency temporary guardian until a permanent guardian could be appointed, and also appointed a visitor, physician, and guardian ad litem and ordered reports to be filed with the court. In May 2004, Kolrud took Lucille Thomas to an attorney and she signed another will naming Kolrud as a beneficiary. Kolrud also submitted a $6,222.70 bill to Lucille Thomas for wages and expenses incurred for assisting in her transition to the nursing home. In September 2004, Kolrud paid himself $6,222.70 without seeking court approval. The court ordered the money held in an interest-bearing account until a final determination could be made on the validity of the debt. Following a series of hearings, the court found Lucille Thomas was an incapacitated person under N.D.C.C. § 30.1–26–01(2), appointed David Thomas guardian and conservator, and denied Kolrud's request for payment of the $6,222.70 bill.

II

[¶ 6] Kolrud argues the district court erred in appointing David Thomas guardian and conservator.

[¶ 7] Although we apply the clearly erroneous standard under N.D.R.Civ.P. 52(a) when reviewing findings of fact in a guardianship proceeding, *see, e.g., Matter of Guardianship of Larson,* 530 N.W.2d 348, 351 (N.D.1995); *Matter of Guardianship of Nelson,* 519 N.W.2d 15, 17 (N.D.1994); *Matter of Guardianship of Renz,* 507 N.W.2d 76, 77 (N.D.1993), courts in Uniform Probate Code jurisdictions apply the abuse of discretion standard when reviewing a trial court's selection of a guardian and conservator. *See, e.g., In re Guardianship of Kowalski,* 382 N.W.2d 861, 864 (Minn.App. 1986); *Matter of Guardianship of Nelson,* 204 Mont. 90, 663 P.2d 316, 318 (1983); *In re Guardianship of Blare,* 1999 SD 3, ¶ 9, 589 N.W.2d 211; Peter G. Guthrie, Annotation, *Priority and preference in appointment of conservator or guardian for an incompetent,* 65 A.L.R.3d 991, 995 (1975). A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made. *In re E.G.,* 2006 ND 126, ¶ 7, 716 N.W.2d 469. A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law. *City of Bismarck v. Mariner Constr., Inc.,* 2006 ND 108, ¶ 8, 714 N.W.2d 484.

[¶ 8] Kolrud argues the district court erred in appointing David Thomas as guardian and conservator because the court misapplied the statutory priorities under N.D.C.C. §§ 30.1–28–11(3) and 30.1–29–10(3). However, N.D.C.C. § 30.1–29–10(4), relating to conservators, provides that "[t]he court, for good cause, may pass over a person having higher priority and appoint a person having lower priority or no priority." Section 30.1–28–11(4), N.D.C.C., relating to guardians, similarly provides that "[t]he court, acting in the best interest of the incapacitated person, may pass over a person having priority and appoint a person having a lower priority." The court found "good cause" under N.D.C.C. § 30.1–29–10(4), and that it would be in Lucille Thomas's "best interest" under N.D.C.C. § 30.1–28–11(4), to pass over Kolrud and appoint David Thomas "even if Kolrud and Thomas were considered equal priority or Kolrud was of a higher priority." Therefore, the dispositive issue is whether the court erred in finding good cause and that it would be in Lucille Thomas's best interest to select David Thomas rather than Kolrud as the guardian and conservator.

[¶ 9] The court found that Lucille Thomas was "generally aware" of the guardianship and conservatorship proceedings and that "she expresses varying positions depending on who she wants as guardian depending on who she is speaking with," which is consistent with the physician's report that she is "a 'people pleaser' who has trouble saying no to people and would be vulnerable to … 'arm twisting' when faced with someone who is in her thoughts placing pressure on her." The court noted "she is forgetful at times and has not been consistent in stating her desires regarding her understanding of her financial affairs or how she wishes her financial and legal affairs to be carried out and by whom she wishes that to be done. What she says and expresses in the areas of financial and legal affairs varies depending on who she is speaking with."

[¶ 10] Kolrud is sixty-nine years old, lives in Jamestown, is in good health, and Lucille Thomas's assets have nearly doubled under his supervision. The court found that "Kolrud and his family care about Lucille and have spent a considerable amount of their time and energy in helping her." David Thomas is seventy

years old, is in good health, and is Lucille Thomas's nephew. The court noted that "Lucille expresses love for him and wished he lived closer to her." The court was also concerned about the annuities Kolrud sold to Lucille Thomas on commission and his being named the beneficiary on all of them, many of which were purchased before her son died. The court noted that David Thomas had no ownership or beneficiary interest, and would not accept any, in Lucille Thomas's assets, and had said he would waive his right to compensation if appointed. Kolrud was willing to waive his right to compensation as guardian and conservator, but was not willing to waive his right to take under the estate. In appointing David Thomas, the court reasoned:

> [U]nder the circumstances of this case Thomas' lack of any actual or potential conflict of interest between his duties as guardian and conservator and any financial interest in Lucille's estate assets is virtually zero. On the other hand, Kolrud's circumstances in becoming a friend of Lucille at the time he was in the process of advising her and then selling her annuities and making commissions and being named as beneficiary of such annuities and other assets and having a very significant financial interest in Lucille's assets as a result of that fiduciary relationship poses a potential built-in conflict of interest in his acting as guardian and conservator for Lucille under all the circumstances presented to the Court and the various conflicting desires expressed by Lucille regarding the size and extent of her estate and how she wishes it to be ultimately handled.... [T]he Court finds that Lucille's best interests will be best met by appointing Thomas as guardian and conservator rather than Kolrud.

[¶ 11] Concern over the appearance of undue influence can establish "good cause" under N.D.C.C. § 30.1–29–10(4), justifying the appointment of a neutral and detached person as guardian and conservator over others with higher priority who have a financial interest in the protected person's assets. *See Matter of Conservatorship of Gessler*, 419 N.W.2d 541, 543–44 (N.D.App.1988); *see also Jarmin v. Shriners Hosps. for Crippled Children*, 450 N.W.2d 750, 752–53 (N.D.1990) (personal representative's interest in estate when accompanied by other circumstances can justify removal). Appointing a neutral and detached person can alleviate "'the possibility of undue influence on the respondent,'" and can "alleviate the possibility of an appearance of undue influence, to the benefit of all concerned." *Gessler*, 419 N.W.2d at 544. On the record before us, we conclude the court's findings on good cause and Lucille Thomas's best interest are not clearly erroneous, and the court did not abuse its discretion in selecting David Thomas as guardian and conservator.

### III

[¶ 12] Kolrud argues the district court erred in denying his request for payment of $6,222.70 for wages and expenses incurred after Lucille Thomas fractured her hip necessitating her move from her apartment to the nursing home.

[¶ 13] A district court has discretionary authority regarding management of a protected person's property and finances, and its decisions on those matters will not be reversed on appeal unless the court abused its discretion. *Matter of Conservatorship of Stensland*, 526 N.W.2d 485, 486 (N.D.1995); *Matter of Conservatorship of Sickles*, 518 N.W.2d 673, 678 (N.D.1994); *Matter of Guardianship of Renz*, 507 N.W.2d 76, 78 (N.D.1993); *Matter of Conservatorship of Kinney*, 495 N.W.2d 69, 71 (N.D.1993); *see also Matter of Estate of Flaherty*, 484 N.W.2d 515, 521 (N.D.1992) (review of fees paid or taken by a personal representative is left to sound

discretion of trial court, and the court's underlying findings will be upheld unless clearly erroneous). We apply the abuse of discretion standard of review to the district court's ultimate decision whether to approve payment of a claim against a protected person's estate and the clearly erroneous standard of review to the court's underlying findings of fact.

[¶ 14] According to Kolrud, in January 2003 he reached an agreement with Lucille Thomas to provide care for her for $1,400 per month. Kolrud also claimed that, after the guardianship proceedings began, she authorized payment of $6,222.70 to him for services rendered when she had to leave her apartment and move to a nursing home. The court denied the payment, reasoning:

> [T]he Court has considered the arguments presented by both parties and fully reviewed Mr. Kolrud's verification for such payment. The payment is in addition to his paying himself $1,400 per month for wages during 2003, which was a payment of $16,800 in itself. He is requesting the balance for wages owed to himself in 2003, to be with Lucille Thomas in Fargo during her surgeries and for expenses in selling and disbursing her apartment all done as per her instructions. Considering the entire record, the court finds that Mr. Kolrud was more than well paid in taking an amount of $1,400 per month. It is also clear to this Court that Ms. Thomas had no idea that Mr. Kolrud was paying himself that amount of money nor is the court convinced that she would deem that appropriate regardless of Mr. Kolrud's position on the matter. In addition, the Court does not deem it reasonable to charge $10 per hour to visit someone at a hospital and $20 per hour to do basic sorting, packing, selling and cleaning of a household. In summary, the Court finds that Mr. Kolrud was

well paid at the rate of $1,400 per month during the time that the alleged services were rendered and the $6,222.70 additional payment if allowed would be unreasonable compensation.

[¶ 15] We conclude the court's findings are not clearly erroneous and the court did not abuse its discretion in denying Kolrud's claim for wages and expenses.

## IV

[¶ 16] The district court orders are affirmed.

[¶ 17] GERALD W. VANDE WALLE, C.J., and WILLIAM F. HODNY, S.J., and DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.

[¶ 18] The Honorable WILLIAM F. HODNY, S.J., sitting in place of KAPSNER, J., disqualified.